State ex rel. Mann and others vs. Brophy.

*By the Court.* — The order of the court below is affirmed, and the cause remanded for further proceedings.

STATE ex rel. MANN and others vs. BROPHY.

CONTEMPT: SHERIFF: LEVY OF EXECUTION. (1, 2) *Proceeding against sheriff under R. S., ch. 149.* (3, 4) *When interrogatories not required.* (5–7) *Excuses for failing to levy as directed: Execution not dated: Order of county judge.* (8) *When officer may be required to pay execution plaintiff the amount of the execution.*

1. The proceeding against a sheriff for contempt under sec. 115, ch. 13, R. S., is a purely criminal one, designed primarily to vindicate the authority and dignity of the court; while that authorized by sec. 21, ch. 149, R. S., is solely for the benefit of the party to a civil action who is injured by the officer's misconduct; and there is no repugnancy between the two provisions.

2. A sheriff may be proceeded against as for a contempt, under said chapter 149, for a willful neglect of duty in failing to make a levy upon an execution in his hands as directed by the attorneys of the judgment creditor.

3. Where the proceeding against the sheriff is by an order to show cause why he should not be punished, etc., if on returning the order he *admits all the facts* constituting the contempt, interrogatories need not be filed, as provided in sec. 19 of said ch. 149.

4. A mere general denial by the sheriff that his failure to levy, as directed, was willful or with intent to impair or prejudice plaintiff's rights, or a mere general statement that he acted in good faith, is not sufficient to require the filing of interrogatories, where the *facts* admitted by him show misconduct for which he may properly be adjudged guilty of a contempt.

5. The fact that an execution is not dated, does not affect its regularity or excuse a failure of the sheriff to levy as directed.

6. Where the officer has been peremptorily directed by the judgment creditor's attorney to *levy on a day named,* his neglect to do so cannot be excused by any judicial order served upon him *after* that day.

7. Upon a judgment rendered in one county, execution issued to the sheriff of another county; and the county judge of the latter made an

order, not entitled in any cause, to stay proceedings upon the execu-
tion " until the further order of the court." *Held*, that the order was
*void*, and, if served in time, would not have excused a neglect to levy
under the execution.

8. It appearing that the whole amount of the debt might have been made
by a levy at the time directed, and that a few days thereafter the judg-
ment debtor was declared a bankrupt, the sheriff, on being adjudged
guilty of a contempt, may properly be required to pay the whole
amount of the debt to the judgment creditor, being at the same time
subrogated to all his rights under the judgment.

APPEAL from the County Court of *Milwaukee* County.

In July, 1874, *Isaac G. Mann and others* recovered a judg-
ment in the county court of Milwaukee county, against Wil-
liam Brunquest, for $1,787.24. This judgment was docketed
in Oconto county on the 27th of the same month, and on the
same day execution for the whole amount (not dated) issued
from the Milwaukee county court to the sheriff of Oconto
county, who was required by its terms to return the same with-
in sixty days. The writ was delivered to the under-sheriff on
the 29th of that month. On the 17th of August following, the
attorneys of the execution plaintiffs wrote to *Mr. Brophy*, the
sheriff of Oconto county, a letter which seems to have been
received by him on the next day, inquiring whether he had
made a levy under the execution, and directing him, if not, to
hold it " until the 25th inst.," but to " levy then without fail."
On the 26th of August, on application of Brunquest, and upon
his affidavit showing the recovery of said judgment against
him in the Milwaukee county court, the issue of said execution
to Oconto county, and the fact that the sheriff of said county
threatened to levy upon the affiant's personal property therein,
etc., and also stating that affiant intended to appeal to the su-
preme court of this state from said judgment, the county judge
of Oconto county made an order (not entitled in any cause)
that all proceedings under said execution be stayed " until the
further order of the court herein." This order, with the affi-
davit on which it was founded, was served on *Mr. Brophy* on

the day of its date. Previously, on the same day, he had received a telegraphic despatch from Milwaukee, sent by the attorneys of the execution plaintiffs, peremptorily directing him to levy under the execution at once. No levy having been made, *Mr. Brophy*, " on or about the last of August," having discovered that the execution was not dated, sent it to the plaintiffs' attorneys in Milwaukee to be corrected in that particular; and the date of issue was inserted and the execution returned by said attorneys, with a statement that the omission of the date was immaterial, and an inquiry whether the sheriff had followed their instructions as to making a levy. Afterwards, in November, 1874, an affidavit of one of the execution plaintiffs was filed, showing the neglect of the sheriff to levy as directed under said execution, and also stating, on information and belief, " that at the time of issuing said execution, the defendant had personal property liable to execution in Oconto county, largely in excess of the amount required to satisfy the execution." The affidavit further stated that as affiant verily believed, said sheriff, willfully and with intent to impair, impede, defeat and prejudice the rights of the plaintiffs, had refused to take any steps towards satisfying the execution, and that the rights of the plaintiffs had been thereby greatly impaired and impeded; that the execution had not been returned to the office of the clerk of the Milwaukee county court, as was therein required; and that no payment had been made on account of said judgment, to the plaintiffs or any one in their behalf, but the whole judgment remained unpaid. Upon this affidavit, and upon the records in said cause, the county judge of Milwaukee county made an order upon *Mr. Brophy* to show cause " why he should not be punished for his alleged misconduct."

At the hearing it was admitted that Brunquest was " adjudged a bankrupt on the 28th of August, 1874, subject to correction if the records show differently." An affidavit of *Mr. Brophy* was also read at the hearing, the essential parts of

which, relied on to excuse his neglect to levy as directed, were substantially as follows: that he was a lumberman, and in carrying on his business as such was obliged to be absent from his home in the city of Oconto, a large part of the year; that he was absent from said city when his deputy received the execution in question, and did not return to the city for a long time thereafter, and was personally ignorant of the fact that the execution had been received by his deputy until the latter gave it to him "somewhere about the middle of August, 1874;" that on the morning of the 26th of August, the order of the county judge of Oconto county above described, was served upon him, as he " was about to levy the said execution upon the personal property of the said Brunquest; " that the execution, when received, was without date, and he did not discover the mistake until " on or about the last of August," when he immediately sent the writ to the plaintiff's attorney for correction; that affiant "never refused or neglected to make a levy of such execution except in pursuance of orders received from plaintiffs' attorneys in said action, and in obeying the order staying proceedings upon such execution; " and that he " positively denies that he willfully or with intent to impair or impede or defeat or prejudice the rights of said plaintiffs, refused to take any steps towards satisfying said execution, but avers that he has acted in entire good faith at all times," etc., etc.

The order of the court, made upon the hearing, recites the facts showing the sheriff's neglect to levy as directed, and also that on the 25th of August, 1874, Brunquest " had personal property in said county of Oconto, liable to execution, largely in excess of the amount required to satisfy said execution; " that on the 28th of the. same month he " filed his petition in bankruptcy; " and that by reason of the sheriff's said misconduct, said plaintiffs had " lost the collection of said execution."

*Mr. Brophy* was thereupon adjudged " guilty of the misconduct alleged against him, and of disobedience of said execution, by which the plaintiffs lost the collection of the same," and re-

quired, in order to indemnify said plaintiffs, to pay them, within thirty days of the date of the order, the full amount of the execution, with ten dollars costs, and in default thereof to be imprisoned in the county jail of Milwaukee county until payment should be made.   The order further provided that *Mr. Brophy* be subrogated to all the rights of said plaintiffs in and to their said judgment against Brunquest.

From this order the sheriff appealed.

*W. H. Webster*, for appellant, contended that sec. 115, ch. 13, R. S. (Tay. Stats., 323, § 160), is a special provision relating to the liabilities of a sheriff for neglecting to make due return of a writ, or for misconduct in relation to process, while sec. 21, ch. 149, R. S. (Tay. Stats., 1842, § 21), is general in its nature ; and, the two being repugnant in their provisions, the former must control in this case ( *Western Bank of Scotland v. Tallman*, 17 Wis., 530) ; and that under the former statute the court could only impose a fine not exceeding $200, and leave the aggrieved parties to their action for damages.   2.  To justify an order under sec. 21, ch. 149, requiring the sheriff to pay the full amount of the execution, it must have been shown that an actual *loss* or *injury* had been produced by the misconduct alleged, to the party complaining of it.   2 Barb. Ch. Pr., 279. But the only *facts* found, or which are pretended to have been shown, are, that the execution debtor, on the day when the appellant was required to levy, had personal property in Oconto county, liable to execution, largely in excess of the amount required to satisfy the execution ; that the appellant omitted to levy ; and that three days thereafter the debtor filed his petition in bankruptcy.   No attempt was made to show that the bankrupt's estate would not pay all his debts ; that the execution creditors had not proven their claim in bankruptcy against his estate (which would have estopped them from claiming indemnity from the sheriff) ; nor that the proceedings in bankruptcy had not been abandoned.   In short, no *loss* or *injury* whatever was shown.  3.  Sec. 21, ch. 149, is *void*, because it attempts to

deprive the defendant in a proceeding of this nature of his constitutional right to a trial by jury.

*Jenkins, Elliott & Winkler,* for respondent:

1. The order served on the sheriff, on the 26th of August, did not even purport to be made in the action. And it was void on its face, because, (1) It was made by a county judge *not* of the county where the action was triable. (2) It undertook to stay proceedings after judgment, and a county judge or court commissioner cannot even stay proceedings *after verdict.* (3) The stay was for an indefinite time. And it is obvious, from the circumstances, that the sheriff dishonestly connived at the order. But, whether that was so or not, he was properly adjudged guilty of contempt, the order being void on its face, and he having neglected to levy, as directed, on the day before the order was made. 2. As to the power and duty of the court in requiring the sheriff to indemnify the party injured, in such a case, counsel relied upon sec. 21, ch. 149, R. S.; and they contended that the order could not have been milder if it had been for the failure to return the execution alone, citing Crocker on Sheriffs, § 804; *Carpenter v. Stilwell,* 1 Kern., 61; *Bank of Rome v. Curtiss,* 1 Hill, 275.

The following opinion was filed at the January term, 1875:

LYON, J.   This is an appeal from an order adjudging the defendant, the sheriff of Oconto county, in contempt for failure to levy an execution in his hands, on the property of the debtor, by means of which failure the execution creditors lost their debt, or were delayed in the collection thereof; and adjudging, also, that the sheriff pay such creditors the amount of the judgment on which the execution issued.

We think it competent for the court, in a summary proceeding as for a contempt, against the sheriff for not executing or returning process, to order the sheriff to indemnify the party injured by such neglect of duty, as was done in the present case. And it is plain that, in a case like this, where the whole

judgment might have been collected had the sheriff done his duty, the only adequate indemnity is to compel the sheriff to pay the judgment. The most he can reasonably ask is to be subrogated to the rights of the judgment creditor. In this case such subrogation was made by order of the court. But we do not care to discuss these propositions at present. That may be done hereafter when the case is finally disposed of.

No interrogatories were exhibited to be answered by the defendant, and we have doubts whether the court below can properly proceed to judgment until this is done. See R. S., ch 149, sec. 19 (Tay. Stats., 1741, § 19). The question was not raised on the argument, but it is involved in this appeal, and is important. We are not willing to decide it without argument. A reargument, to be confined to this question, is therefore ordered.

The cause was reargued at the June term, 1875.

*Hastings & Greene* and *W. H. Webster*, for the appellant, argued, 1. That at common law, where the contempt, not being committed in view of the court, was *constructive* only, the accused, unless he appeared and admitted the contempt, was always formally examined upon *interrogatories*, by which the facts constituting the offense were so classified and arranged that he could purge himself of the contempt by his own sworn answers and the testimony of others (Tidd's Pr., pp. 58, 59, and cases); and he had also a right to demur or except to the interrogatories. See cases cited in 2 Burr. Pr., 217. 2. Ch. 115, R. S. 1849, regulating the subject of contempt, was adopted from New York; and the settled construction of this statute in that state, *before its adoption here*, was, that when the proceeding was by order to show cause, if the contempt was denied, interrogatories must be filed before judgment for contempt could be rendered. *Brooks v. Gibbons*, 4 Paige, 374–381 (decided in 1834); *Albany City Bank v. Schermerhorn*, 9 id., 372 (decided in 1842). These seem to be the only decisions,

construing the statute, that had been rendered at the time of its adoption here; and this construction must be deemed to have been adopted with the statute. *Poertner v. Russell*, 33 Wis., 194. *Mr. Brophy's* affidavit explicitly denies that he refused to take steps to satisfy the execution, and alleges that he acted in entire good faith at all times after the execution came into his hands. This raises a material issue upon the most essential charges in the moving affidavit. There was only one day between the time when he was authorized to levy, and the time when the order of the county judge of Oconto county was served upon him, and only two days before the debtor was in bankruptcy. Under his allegation that he did not refuse to levy except with the utmost good faith, he could have explained, upon interrogatories or special examination, why he did not levy on the 25th, and stated any other matter showing his good faith. However void the order to stay proceedings might seem to a lawyer, there are few, not lawyers, who would not regard it as valid. If the sheriff honestly believed that order to be valid, though that would be no defense in a civil action, it is a complete defense to this criminal proceeding for a contempt. Even the advice of counsel is a defense. *Billings v. Carver*, 54 Barb., 40. The appellant's affidavit, therefore, denying any wrongful intent and asserting his perfect good faith, raises a material issue, which must be decided by trial of interrogatories, or special examination, if they do not require his discharge at once. When the rule to show cause has been served, "if the contempt is admitted, the court may render judgment on said admission; but if the defendant denies that he committed the acts complained of, *or insists that they do not constitute a contempt*, then the court should hear the evidence, and upon that determine the guilt or innocence of the party." *Whitlem v. The State*, 36 Ind., 196–213. 3. Counsel contended that if sec. 19, ch. 149, cannot be held to *require* interrogatories when the order to show cause is resorted to, then the statute is silent as to the proper practice in that respect; that

the order to show cause is merely a new mode of acquiring jurisdiction, and the practice after defendant has appeared should be the same as before the statute; that the statute should be held to change the common law only so far as it clearly manifests such an intent; and that this should especially be so where the proceedings are criminal, and the ancient practice affords the accused facilities for proving his innocence which he would not enjoy were the practice changed as claimed. 4. Of cases decided in New York or in this state since the adoption of the statute here, that found in 2 Sandf., 724, did not turn on the question here presented, and the remarks there found touching that question were *obiter*. The case in 5 Duer, 629, is authority for the position that where the contempt, or any material fact alleged as constituting it, is denied, further investigation is necessary, in which the accused may prove his innocence by his own testimony or that of others. In 37 Barb., 97, the filing of interrogatories was held to be necessary in all cases. This decision was reversed in 37 N. Y., 235, without discussion and by a divided court; but there was in that case no denial of the contempt, and the court of appeals did not pass upon the question whether, if there had been such a denial, the proper practice would not have been to afford a further investigation of the facts. In 34 Wis., 564, this court held the filing of interrogatories to be proper and regular, and also that, on defendant's appearing and denying the alleged contempt, it was proper practice *to discharge the order to show cause* without further proceeding. But this court did not hold, and it has never been held, that the accused can be *convicted* on such *ex parte* affidavits, when he denies the contempt. On the other hand it is held that when an *officer of court* appears and under oath denies the contempt, or *asserts that his acts were in good faith*, the proceedings *must be discharged*. *Wells v. The Commonwealth*, 21 Gratt., 500 ; Tidd's Pr., 58, 59. 5. The proceedings here were for failing to make a return, as well as for neglecting to levy. But it is only where a rule has been entered or notice

given requiring the sheriff to make his return, and upon diso-
bedience of this rule, that he can be punished for contempt in
not making his return. C. C. Rule 3; R. S., ch. 149, sec. 6;
1 Burr. Pr., 358–9, 472; 2 Johns. Cas., 71; 1 Gra. Pr. (3d ed.),
556; Crocker on Sheriffs, §§ 781, 783; Green's Pr., §§ 1287 et
seq. The practice at the common law was the same. Tidd,
253–4, 928. The direction to return the writ in sixty days is
no part of its appropriate command. The statute prescribing
the *contents* of the writ says nothing about when it shall be re-
turned. R. S., ch. 134, sec. 8. 6. So far as this is a proceed-
ing for neglect to levy within the life of the execution, it can-
not be sustained. If the sheriff, at the expiration of sixty
days, had returned the execution *nulla bona*, or if, being noti-
fied to return it, he had returned it *nulla bona* within the time
limited in the notice, he could not be proceeded against for
contempt in neglecting to make the debt. The only remedy
would have been by an action for a false return. Even the
court has no power to direct the sheriff as to how and when he
shall collect his execution. The discretion and responsibility
as to these matters are his only (*Browie v. Brahe*, 4 Duer, 676),
though he is liable to an action for negligence. 7. The only
evidence that the debtor had sufficient property on which to
levy, is the statement of an interested party *on information and
belief.* That might have been reason enough for the court to
direct a further examination, but is wholly insufficient ground
for the imposition of a fine of $1,800. The facts should have
been clearly proven, by witnesses who had positive knowledge.
*In re Judson*, 3 Blatchf., 148; 7 Dane's Ab., 307; 3 Estee's
Pr., 833. 8. The provisions of sec. 115, ch. 13, R. S., are
special, relating to the particular subject of the neglect of a
sheriff "to make due return of any writ," and to "any default
or misconduct in relation thereto;" and in so far as they limit
the fine to be imposed to $200, they are repugnant to sec. 21,
ch. 149, which authorizes the court to impose the payment of
a *greater* sum as indemnity. Under the rule in *Bank v. Tull-*

State ex rel. Mann and others vs. Brophy.

*man,* 17 Wis., 530, the former statute should control. Sec. 21, ch. 149, can be sustained only upon the theory that the sum which it empowers the court to require payment of is a *fine* — a *punishment* for the contempt. If the proceeding be regarded as one to recover *damages* for the sheriff's neglect, then he is entitled to the verdict of a jury. And there is no necessity for a resort to such proceeding for the sake of indemnity in a case like this. Under sec. 115, ch. 13, the party injured has his action for any neglect, misconduct or default of the sheriff in regard to his writ; the officer and his bondsmen are liable; and it is contrary to all our notions of the remedial processes of the law to permit a person to recover damages for negligence by a judgment based on an *ex parte* affidavit. *Matter of Rhodes,* 65 N. C., 518; *Morris v. Whitehead,* id., 637.

*Jenkins, Elliott & Winkler,* for the respondents, contended: 1. That the affidavit of the defendant, upon the return of the order to show cause, admitted all the facts charged against him. 2. That where the proceeding is by order to show cause, it is not essential that interrogatories should be exhibited; and this is especially true where the return to the order admits the essential facts charged. Interrogatories are peculiarly the concomitant of an attachment. The writ, generally issued *ex parte,* is to the officer who arrests the accused. It contains no mandate to the party; does not call upon him to defend himself. He neither pleads nor shows cause. It is in answering the interrogatories that he makes his defense. Here he is first called upon to admit or deny. To this practice interrogatories are clearly essential, and hence required by statute. But an order is addressed to the party; is itself interrogative; is accompanied by the charge; and requires the defendant to give the court the facts and reasons which are to relieve him from punishment. He makes his defense in answer to this order. If that defense admits the facts charged, there is no occasion for further inquiry. If the facts are disputed, it has not been unusual to file interrogatories. But this would seem to be of

advantage to the plaintiff rather than to the defendant. The former, while not bound by the answers of the latter, may have the benefit of every chance admission made in them. The defendant, on the other hand, can scarcely hope, through a cross-examination of this kind, to have his own defense made stronger than he has stated it in his affidavits. The statute, therefore, which limits the requirement of interrogatories to cases of attachment, is founded on substantial reasons; and there is nothing in positive law, reason or established practice, which requires interrogatories in such a case as this. *McCredie v. Senior*, 4 Paige, 378; *Albany City Bank v. Schermerhorn*, 9 id., 372; *In re Smethurst*, 2 Sandf. S. C., 724; *Watson v. Fitzsimmons*, 5 Duer, 629.

CoLE, J. In the former opinion filed in this case, we stated our conclusion that the sheriff could be proceeded against as for contempt, under the provisions of ch. 149, R. S., for a willful neglect of duty in failing to make a levy upon an execution in his hands as directed by the attorneys of the judgment creditor. The counsel for the sheriff contended then as now, that sec. 115, ch. 13, R. S., prescribes the penalty for such default or misconduct on the part of the sheriff, and insist that as this is a special provision relating to that particular subject, it controls the general provisions found in ch. 149. But we think there is no necessary conflict between the various provisions of the statute referred to. According to our view, the proceeding under sec. 115 is for a criminal contempt, where the fine imposed goes into the state treasury for the benefit of the school fund. It is a purely criminal proceeding for the punishment of an offense or a violation of duty on the part of the sheriff. Its primary object is to vindicate the authority and dignity of the court whose process the sheriff has neglected to return or to execute as therein commanded; and, to that end, this provision enacts that the sheriff shall be liable to fine or attachment, or both, at the discretion of the court, but the fine

in no case can exceed $200. The proceeding for contempt under ch. 149, which was resorted to in the present case, was to enforce a civil remedy and to protect the rights of a party in a civil action. Its object is to indemnify a party for the actual loss sustained by the misconduct complained of. It is solely for the benefit of the party injured, and therefore is not to be confounded with a prosecution for a criminal contempt, to punish some violation of duty on the part of the officer. The distinction is clearly pointed out in the case of *State ex rel. Chappell v. Giles*, 10 Wis., 101; and there can be no doubt that it is well founded. There can, therefore, be no repugnancy, as claimed, between the provisions of the two statutes, authorizing, as they obviously do, proceedings quite different in their nature and object — the one intended to punish conduct which impairs the authority of the court and impedes the due administration of justice, and the other calculated to indemnify a party for the loss or injury produced by the misconduct alleged.

Ch. 149 so clearly authorizes every court of record to punish as for a contempt any neglect or violation of duty on the part of its officers by which the rights and remedies of a party in a cause in such court were impaired, impeded or prejudiced, that it is deemed unnecessary to do more than refer to its provisions for a justification of the proceeding in the present case. The question as to what practice should be pursued was the only one about which we had any doubt upon the former argument; and upon that point further discussion was desired. The proceeding against the sheriff was by an order to show cause why he should not be punished for his alleged misconduct in failing to make a levy upon the execution. And the doubt we had was, whether, in such a case, interrogatories should not be filed touching his neglect, and his answers thereto required, under sec. 19, before the court proceeded to award punishment. The counsel for the relators insist that when the court grants an order on the accused party to show

cause why, he should not be punished for his alleged misconduct, if, upon the return of the order, the party proceeded against in answer thereto admits all the facts constituting the contempt, then interrogatories are unnecessary. And authorities in New York are referred to, construing the statute of that state, which is similar to our own, and whence ours was doubtless derived, which fully sustain this position. In *McCredie v. Senior*, 4 Paige, 378, Chancellor WALWORTH, while considering the question of practice under the statute of that state, in substance remarks, that two modes of proceeding are authorized: one by attachment, and the other upon an order for the accused party to show cause why he should not be punished for the alleged contempt. Upon the day appointed, in the latter case, he observes, if the contempt is admitted, or no cause is shown why the accused should not be punished therefor, the court proceeds to award the punishment. But if the defendant appears and denies the contempt, the court proceeds substantially in the same manner as on the return of an attachment. The same doctrine is laid down by the chancellor in *The Albany City Bank v. Schermerhorn*, 9 Paige, 372. These cases are referred to with approval in *Pœrtner v. Russel*, 33 Wis., 194, and *Witter v. Lyon*, 34 id, 564, as settling the correct practice upon an order to show cause, and as giving a judicial construction of the statute which we are inclined to adopt. See also *Matter of Smethurst*, 2 Sandf. S. C., 724; *Pitt v. Davison*, 37 N. Y., 235.

In answer to the order to show cause, the sheriff filed his affidavit, wherein he distinctly admits the receipt of the execution and the letter of the plaintiff's attorneys, dated August 17, 1874, in which he was directed to make levy on the 25th of that month without fail. This letter was received by him on the 18th of August, as he admits, and he offers no excuse or justification for disregarding its instructions. Thus he admits the facts which show that he violated his duty and was guilty of misconduct, by which the plaintiffs failed to acquire

their lien upon the property of the judgment debtor before his bankruptcy. This was practically admitting the contempt, and dispensed with the necessity of filing interrogatories, under the practice clearly established by the New York decisions.

It is true, the sheriff positively denies that he wilfully, or with intent to impair or prejudice the rights of the plaintiffs, refused to take any steps towards satisfying the execution; and he avers that he acted in entire good faith at all times after the execution came to his hands, but was prevented from making a levy by causes stated. One cause or reason stated is, that the execution, when received by him or by his deputy, was not a complete writ, because it was not dated. The omission to date the execution did not affect its regularity (sec. 9, ch. 134, R. S.), and constituted no excuse for failing to make a levy upon it. Another reason stated in the affidavit as a justification for his delay is, that on the morning of the 26th of August, he was served with an order granted by the county judge of Oconto county, staying all proceedings under the execution. This order was served upon the sheriff on the day after that upon which he had been peremptorily directed to make the levy; and besides, it was clearly void. What the sheriff says in the affidavit in regard to his good faith and intent in the matter, can have no possible relevancy to the question of neglect, and shows no cause why he should not be punished for his misconduct. It was his duty to obey the instructions he had received in regard to making the levy.

It is stated in the moving papers, upon information and belief, that at the time of issuing the writ the judgment debtor had sufficient personal property liable to sale to satisfy the execution, and this is not denied by the officer. On the 28th of August the judgment debtor was adjudged a bankrupt. If the sheriff had performed his duty, he might have collected the amount of the execution. Under these circumstances, the amount of the execution is the sum which the sheriff ought to pay to indemnify the plaintiffs for the actual loss or injury

which they have sustained by his misconduct. As a general rule we must presume that the plaintiffs were damnified to this extent, when *prima facie* it appears that the judgment debtor had property not exempt sufficient to satisfy the execution, which was within the reach of the officer, and upon which he might have made a levy had he exercised due diligence.

These remarks, together with what is said in the former opinion, dispose of all the material questions in the case.

*By the Court.*— The order of the county court is affirmed.