STEELE & WALKER v. M. W. CRABTREE ET AL.

FILED MAY 2, 1894.    No. 5211.

1. **Constables: EXECUTIONS.** It is the duty of a constable to ex-
ercise all reasonable diligence necessary to a compliance with
the mandates of an execution intrusted to him for the satisfac-
tion of a money judgment.

2. ————: EXECUTING WRITS: NEGLIGENCE: DAMAGES. A con-
stable, to whom has been intrusted the collection of a judgment
by an execution placed in his hands, must with reasonable dili-
gence seek out and levy on such personal property of the judg-
ment defendant as is subject to execution, and for his failure so
to do, the constable is liable to the execution creditor for such
damages as result from this neglect of duty.

3. ————: ————: FAILURE TO MAKE LEVY. To excuse the lia-
bility of a constable for a failure to levy upon available personal
property of an execution defendant, it is not sufficient to show
that such constable failed to make a levy because of his reliance
on the false representations of the execution defendant as to such
defendant having taken a stay of, or appeal from, the judgment
upon which execution had issued; neither is it sufficient to show
notice of an application by the judgment defendant for the issue
of an injunction to restrain the collection of such judgment.

4. ————: ————: ————: INDEMNITY BONDS. The failure of a
constable seasonably to levy an execution on personal property
legally subject thereto in possession of the debtor, and within
his reach, was not excused by a subsequent demand from the
judgment plaintiff of a bond of indemnity against damage be-
cause of a proposed levy on the property of the judgment de-
fendant, and it matters not that such bond, when so demanded,
was refused.

ERROR from the district court of Madison county. Tried
below before NORRIS, J.

The facts are stated by the commissioner.

*Wigton & Whitham,* for plaintiffs in error:

The execution being valid and regular on its face, and

there being property in the possession of the judgment debtor, owned by him, the title to which was unquestioned, the defendants will be liable irrespective of the fact that plaintiff gave defendant Crabtree no indemnity bond. (Maxwell, Justice Practice, 253; Crocker, Sheriffs, sec. 283; Murfree, Sheriffs, sec. 959; *Phillips v. Spotts*, 14 Neb., 139; Cooley, Torts, 466.)

The burden of proof is on the defendants to show some excuse or reason why the defendant Crabtree was not negligent in failing to levy, it having been shown that Hoover had sufficient property not exempt in his possession at the time the execution was in the hands of Crabtree, to satisfy it. (Maxwell, Pleading & Practice [5th ed.], 576; *Elmore v. Hill*, 46 Wis., 618, 51 Wis., 365; *People v. Palmer*, 46 Ill., 398; 2 Greenleaf, Evidence, 585; Crocker, Sheriffs, 432.)

It is a well established rule of law that a paper filed after the time limited by statute for its filing has no force or effect and may be stricken from the files, and that a justice of the peace approving the same exceeds his authority. (*Duckwell v. Rogers*, 15 O. St., 546; *Bell v. White Lake Lumber Co.*, 21 Neb., 525; *Greenwood v. Craig*, 27 Neb., 669; *Birdsall v. Carter*, 16 Neb., 422; *Patterson v. Woodland*, 28 Neb., 250.)

When property is pointed out by the plaintiff as that of the defendant, the officer must levy, or must justify his failure to levy by proving that the ownership was not in the defendant. (Freeman, Executions, 107, 254; *Mann v. Brophy*, 38 Wis., 426; *People v. Palmer*, 46 Ill., 398.)

The officer cannot shield himself by showing bare assertions and rumors which he has heard. He must show that they are well founded. He is bound to notice only legal claims fairly exhibited and not assertions and threats of individuals or vague information. If he takes notice of these and fails to make a levy, he does so at his peril and will be liable for damages. (Freeman, Executions, 107, 254; *Peo-*

*ple v. Palmer*, 46 Ill., 398 ; *Dunlap v. Berry*, 4 Scam. [Ill.],
327 ; Crocker, Sheriffs, 35, 851 ; *Hinman v. Borden*, 10
Wend. [N. Y.], 367 ; *Reeves v. Parish*, 4 S. E. Rep. [Ga.],
768 ; *Mann v. Brophy*, 38 Wis., 413.)

*John R. Hays, contra:*

Under the most favorable circumstances a constable must
often act at his peril, and besides the legal presumption of
the validity of his official acts, he is entitled to the most
lenient consideration consistent with the law, when it is
manifest that he acted with perfect good faith and endeav-
ored honestly to do his whole duty. (*Green v. Jones*, 39
Ga., 521 ; Murfree, Sheriffs, sec. 960.)

The constable is not bound to use more than ordinary
diligence. Ordinary diligence is such as a reasonable man
would exercise in the performance of like duties under the
same circumstances. Reasonable diligence is sufficient.
(*Crosby v. Hungerford*, 59 Ia., 715; *Elmore v. Hill*, 51
Wis., 365; *Whitney v. Butterfield*, 13 Cal., 335.)

The presumption of diligence obtains in favor of the
officer in the service of process, as it does in other situations
that the officer did his duty. (*Livar v. State*, 9 S. W. Rep.
[Tex.], 552.)

It is not always required that an officer proceed at once
to execute process, when not warned of the existence of
special urgency. (*Whitney v. Butterfield*, 13 Cal., 335.)

The officer is not an insurer that no loss shall happen to
the plaintiff or creditor in consequence of any delay on his
part to serve process. (*Tucker v. Bradley*, 15 Conn., 46.)

RYAN, C.

The petition alleged that the defendant M. W. Crabtree,
on November 8, 1887, was duly elected to the office of con-
stable in and for Norfolk precinct, Madison county, Ne-
braska; that in due time he qualified as such officer, the
sureties on his official bond being his co-defendants; that

on November 26, 1888, the plaintiff recovered a judgment against J. D. Hoover before George N. Beels, a justice of the peace in and for said Norfolk precinct, in the sum of $77.47, and costs amounting to $3.20; that afterwards, on December 10, 1888, an execution was duly issued upon said judgment and delivered to said constable, commanding him to collect the amount of said judgment, interest, and costs, and accruing costs, out of the personal property of said J. D. Hoover, and to pay the same to the party entitled thereto, and make return showing his manner of executing the said writ within thirty days from the receipt thereof. The above allegations were by the answer admitted to be true.   There was, however, a denial of the other averments of the petition, which other averments were as follows:

"6. Said constable neglected and refused to execute said process, although there was then in his county property belonging to said J. D. Hoover on which he might have levied sufficient to make said amounts, but the defendant M. W. Crabtree, on the 12th day of June, 1889, returned said writ without executing the same, and the said J. D. Hoover has not now, nor has had since the return of said writ, property upon which a writ of execution could levy, and said defendant M. W. Crabtree did not therein faithfully perform the duties of his said office of constable as required by law, but has wholly failed to perform the same, whereby the plaintiff has lost his said debt, to his damage in the said sum of $87.07, with interest thereon from the 26th day of November, 1888, at the rate of ten per cent per annum."

Judgment was prayed for the amount last named. That portion of the answer not above referred to was in the following language:

"2. The defendant, for further answer to said petition, avers that upon the delivery of the execution mentioned in count 5 of said petition to the said M. W. Crabtree, constable, he went to Battle Creek, the place of residence

of J. D. Hoover, the execution defendant, for the purpose of levying on the property of said J. D. Hoover, for the satisfaction of said judgment. Whereupon he was informed by the said J. D. Hoover, execution defendant, that prior to the date of said execution the said J. D. Hoover, execution defendant, had filed with George N. Beels, justice of the peace, before whom the judgment referred to in said petition was rendered, a bond provided by law to stay execution on said judgment, and on the said day the said J. D. Hoover, execution defendant, served upon M. W. Crabtree a notice in writing that he intended applying to the county court of Madison county, Nebraska, for an injunction for the purpose of restraining the enforcement of said judgment, which said notice in writing is hereto attached, marked 'Exhibit A.' That upon receiving said notice, and being advised by said Hoover, execution defendant, of the filing of said bond, the defendant M. W. Crabtree reported to Messrs. Wigton & Whitham, attorneys for plaintiffs herein, that said notice had been served upon him, and demanded of them a bond of indemnity to secure him against any damage which he might be called upon to do by reason of the levying of said execution upon the property of said J. D. Hoover, execution defendant, and the said Wigton & Whitham refused to furnish bonds of indemnity; whereupon defendant M. W. Crabtree returned said execution as set forth in plaintiff's petition.

"3. Defendants deny that by reason of the failure to deliver the execution as set forth in said petition that plaintiffs have lost their demand against the said J. D. Hoover, and aver that on the 7th day of December, 1888, said execution defendant J. D. Hoover filed with the said George N. Beels, justice of the peace, a bond in manner and form as provided by law to stay execution upon said judgment with sureties approved by the said justice, and said bond is sufficient to secure the payment of said demand."

The following is a copy of the notice referred to as Exhibit A in the above referred to second paragraph of the answer:

"BATTLE CREEK, NEB., 12–11–'88.

"*To Wigton & Whitham and M. W. Crabtree:* Please take notice, that I, J. D. Hoover, defendant in the case of Steele & Walker v. J. D. Hoover, do intend to apply to the district court for an injunction restraining the enforcement of the execution in favor of said Steele & Walker and against the undersigned now in the hands of said M. W. Crabtree for execution, and issued from the court of George N. Beels, justice of the peace in and for Madison county, Nebraska. Said application will be made before his honor Judge Duncan on the 15th day of December, A. D. 1888.                      J. D. HOOVER."

There was a reply in denial of the averments of the answer. The issues were tried to the court, without a jury, and judgment rendered in favor of the defendants. The trial of the case began with the following admission:

"Mr. Hays: The defendants admit that, if present, J. D. Hoover, W. E. Hoover, and Simon Montgomery would testify that at the time the execution was given to the defendant Crabtree, and until and including the 12th of December, 1888, J. D. Hoover had property not exempt from execution in the county of Madison sufficient to satisfy the execution held by the defendant Crabtree and being the same mentioned in this case; and the defendants further admit, and the defendant Crabtree further admits, that the judgment of Steele & Walker v. J. D. Hoover still remains unpaid. The defendants further admit that at the time of the return of said execution, and at the time of the commencement of this action, and thenceforth to the present time, said J. D. Hoover has had no property upon which this execution could be levied to make the judgment mentioned in the pleadings."

The defendant Crabtree testified that the reason he did

not levy the execution when the same was placed in his hands for that purpose was (to use his own language) "because they notified me that they had filed a stay bond and appealed the case." He further testified that he went to Battle Creek, where he saw J. D. Hoover, the execution defendant, and informed him of his business, and was thereupon told by Hoover that he had filed a stay bond with the justice, and had also filled out this notice of appeal to the district court. Witness stated further: "I believe that he [Hoover] said if I made the levy I did it at my risk, that a bond for an appeal was filed and that I would get my foot in it if I levied, and that I had better go back and get an indemnity bond." He further said that he received the notice, made a part of his answer, just after Hoover had notified him about the stay bond; that Hoover said, "just wait a minute, I want to serve a notice on you," and went back to the desk and wrote out the notice, and said, "if you insist on making a levy, I would advise you to go back and get an indemnity bond before you make it;" that he showed the notice to Mr. Whitham, one of the attorneys of Steele & Walker, the same day, and asked for an indemnity bond, which was refused; that he made inquiry as to the stay bond of Mr. Beels, the justice before whom the judgment was obtained, and was told that a stay bond had been sent down, but, in the opinion of the justice of the peace, it was one day too late. This so-called stay bond was not introduced in evidence, but since the judgment it is admitted to have been rendered on November 26, 1888, and in the third paragraph of the answer it is alleged that the stay bond was filed on December 7, following. It is clear that whatever was the contents of the bond, it was filed too late to be of any avail under section 1049 of the Code of Civil Procedure.

On behalf of plaintiff, George L. Whitham testified as follows: " On the day that Mr. Crabtree received the execution, or on the day on which it was to be levied, he

came to me with the execution in his hands [as attorney for plaintiff, of course] and requested instructions in regard to the levying of the execution. I said to him that he should go to Battle Creek and see Mr. Hoover, and that I thought Mr. Hoover would pay him the money on the execution, but that if he did not do so, he [Crabtree] should at once levy on Mr. Hoover's stock of goods, which was there at Battle Creek, and which Mr. Hoover owned at that time. When Mr. Crabtree returned on the day on which he testified—I cannot recollect whether that was the day or not, but I think it was—he returned on either the 10th or 11th of December, I think it was, of 1888; he said to me that he did not make the levy and showed me this notice that he has stated about, and he said to me, also, that Mr. Hoover had that stock of goods at that time."

It is without question that there was, as alleged, the recovery of the judgment; the issue of an execution thereon to Crabtree as constable; the existence of a stock of goods of the execution defendant, subject to and within the power of said constable to make a levy thereon for the satisfaction of the execution with the collection of which he was charged. It is equally without question that afterwards, and before the return of the execution, the stock of goods was placed beyond reach, and that Hoover never since has owned sufficient property from which the judgment in favor of plaintiff could be satisfied. Every element essential to the liability of the defendants is thus established, and it remains but to consider whether the failure to make the levy has been sufficiently excused by the defendants. As applied to the facts of this case, the law admits of but little question.

In the case of *Dunlap v. Berry*, 4 Scam. [Ill.], 331, we find the following language: "The first instruction is in the following words: 'If the jury believe that the said Elder had property in the county of Morgan sufficient to pay the execution, or part thereof, against him, and that

the said Dunlap by reasonable diligence and exertions could
have made the amount of the said execution, or part thereof,
they will find for the plaintiff.' The purport of this in-
struction is simply to require the sheriff to make reasonable
exertions to levy upon the property of the defendant in his
county. This at least every sheriff and constable is bound
to do, and if he fails to exercise due diligence in the dis-
charge of his duty in that respect, he is responsible for
whatever loss or detriment the person who commits an ex-
ecution to his hands may sustain in consequence of such
failure. (*Hargrave v. Penrod*, 1 Ill., 401.)

In *People. v. Palmer*, 46 Ill., 403, is the following lan-
guage : "The judgment against Crawley was obtained in a
foreign county, and could only be made a lien by the levy
of the execution which issued upon it, and filing, by the
sheriff, a certificate of such levy in the recorder's office of the
county where the land was situated. (Ch. 57, R. S., 305, sec.
25.) By omitting to make this levy and making and filing
the certificate thereof, the plaintiff in the execution lost his
lien on the land. The excuse for this neglect by the sheriff
is that the plaintiff in the execution had not furnished any
funds to pay the fees for filing and recording the certificate
of levy. This excuse is wholly insufficient to relieve the
sheriff from his responsibility in failing to levy and making
and presenting his certificate thereof to the clerk to be filed.
It was his duty to make a levy on the land and present the
certificate, to be filed of record with the clerk of the circuit
court, and if the clerk failed to record it by reason that his
fees were not paid, the sheriff had discharged his duty by
presenting the certificate for record. The sheriff should
have levied on the land at all hazards and have made a cer-
tificate thereof, which if, on being presented to the clerk,
he refused to record, the sheriff would be exonerated."

In *Elmore v. Hill*, 51 Wis., on pages 366 *et seq.*, occurs
the following language: " The rule of diligence required
of an officer in making a levy of an execution placed in

his hands for collection was very clearly and carefully
stated by Mr. Justice Lyon when this case was here on
a former appeal. (See 46 Wis., 618.) It is there stated
that 'the result of the adjudications on the subject seems
to be that on receipt of the execution, in the absence
of specific instructions, the officer must proceed with rea-
sonable celerity to seize the property of the debtor if he
knows, or by reasonable effort can ascertain, that such
debtor has property in his bailiwick liable to seizure on
execution.  The officer must do this as soon after the
process comes to his hands as the nature of the case will
admit.  If he fails to execute the process within an ap-
parently reasonable time, the burden is upon him to show
by averment and proof that his delay was not in fact
unreasonable; failing this, he must respond in damages
to the party injured by his negligence.'  Within this rule
of law it is clear to our minds that the plaintiffs were
entitled to judgment upon the undisputed facts of the
case, and the court should have so directed the jury to find.
The execution was delivered to the sheriff about 4 P. M.
of the 25th of April, 1876.  The defendant in the execu-
tion carried on its business in the city of Fond du Lac,
within a mile or a mile and a half of the court house.
The under-sheriff the same evening saw the secretary of
the company and told him that he had an execution
against the company, and asked him what he was going to
do about it; if he was ready to pay it.  The secretary in-
formed him that the board would have a meeting the next
morning and make some arrangements, as the under-sheriff
understood, about paying the execution.  Nothing further
was done towards collecting the execution by the officer,
and on the following Saturday, the 29th of April, the com-
pany made an assignment.  It was admitted that during
this time the judgment debtor had property accessible, or
which the officers might readily have found, sufficient to
satisfy the execution.  Under these circumstances, as was

said by Mr. Justice Lyon in the former opinion, we have no difficulty in holding that this unexplained delay was actionable negligence if the debt was thereby lost. For the purposes of the case we assume that no instructions were given to the sheriff by the plaintiff's attorney to proceed and execute the writ at once. Proper diligence required him to make a levy, within a reasonable time, without such instructions. It probably would not have taken an hour to make a levy, as property of the judgment debtor was so accessible and near at hand. The delay of the officer in making it is unexplained and entirely unexcused. The plaintiffs have lost their debt in consequence of it, and the defendant is answerable for the injury occasioned by his want of diligence in the discharge of his duty. (See *Lindsay's Ex'rs v. Armfield*, 3 Hawks [N. Car.], 548; *Hearn v. Parker*, 7 Jones' Law [N. Car.], 150; *Hinman v. Borden*, 10 Wend. [N. Y.], 367; *Janvier v. Vandever*, 3 Harr. [Del.], 29; *State v. Roberts*, 7 Hals. [N. J. Law], 115; *State v. Brophy*, 38 Wis., 413.) The court in this case should have directed the jury, upon the evidence, to render a verdict for the plaintiffs for the amount claimed in the complaint."

In the petition it was alleged that the execution was issued on December 10. In the answer it was averred that constable Crabtree, upon the delivery of the execution to him, went to Battle Creek for the purpose of levying it. There is no evidence as to the particular date on which Crabtree made this trip. The notice served on him by Hoover bears date the 11th, so that it may fairly be assumed that he went to Battle Creek the day after the execution was issued, possibly on the day he actually received it. The party from whom he was required to collect his execution informed him that he had filed a stay bond. This the constable had no right to believe, for section 1052 of the Code of Civil Procedure requires that the justice of the peace who issues an execution, in case of a stay, shall recall

it. The constable should have acted upon no other evidence as to the filing of a stay bond than that required by statute. As a matter of fact, it seems that the execution issued after the time had expired for staying the judgment, and the constable had no excuse for the inference that the justice of the peace who issued the execution must have done so notwithstanding a stay bond filed. Again, it is alleged, as excusing the failure to levy, that the execution defendant Hoover informed the constable that he had appealed from the judgment. An undertaking on an appeal, to be effective, must be taken by the justice of the peace who rendered the judgment within ten days from such rendition. The constable was equally censurable for assuming that the justice of the peace had in the issuance of the execution ignored the fact of his approval of the appeal undertaking as in acting upon the assumption that he had ignored the filing of the stay bond. The judgment was admittedly rendered on November 26, 1888, and thereon execution was issued December 10 following. It is probable if there had been approved an appeal undertaking, or had been filed a stay bond within the proper time—which fact had been overlooked by the justice of the peace when he issued the execution—that the constable, upon a showing of that fact, could have exonerated himself from liability; but having acted upon the assumption of such a mistake on the part of the justice of the peace, he was bound at his peril to make good the assumption, which in this case he has completely failed to do. The notice served upon the constable by Hoover is wholly unknown in law, and, in view of the immediately previous contradictory statements made by Hoover of a stay taken, and of an appeal approved, ought not to have received the slightest consideration. The demand for an indemnity bond came after a failure to make the levy required of the constable. In some states the officer, after making the levy under the provisions of the statute, may demand an indemnity bond un-

der certain circumstances, and upon failure to receive it, may release his levy. There is, however, no such statutory provisions in this state, and we may not, therefore, proceed under the analogy furnished by such statutory provisions. It is safe, however, to say that even in the states where the statutes authorize the demand of an indemnity bond, such demand can be made only after levy. In principle there could exist no good reason why, before the levy, such bond should be required, for the danger to be indemnified against must then be purely imaginary. In the case at bar the constable wholly failed to excuse his neglect to make a levy of his execution, in consequence of which the plaintiff's claim has been lost. The judgment of the district court in favor of the defendant was, therefore, erroneous and is

REVERSED.